UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ANTHONY ANTUNES,

                                        Plaintiff,

                        - against -                          **OPINION AND ORDER**

PUTNAM/NORTHERN WESTCHESTER BOARD OF              No. 09-CV-3063 (CS)
COOPERATIVE EDUCATIONAL SERVICES, and
VINCENT GARNOT, individually,

                                        Defendants.
-----------------------------------------------------------------------x

<u>Appearances:</u>
Drita Nicaj
Law Offices of Drita Nicaj
LaGrangeville, New York
*Counsel for Plaintiff*

Mark C. Rushfield
Shaw, Perelson, May & Lambert, LLP
Poughkeepsie, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is Defendants' Motion for Summary Judgment.  (Doc. 16.)

## I.        BACKGROUND

        The following facts are undisputed except where noted.  Plaintiff Anthony Antunes was

born March 27, 1927.  (Pl.'s 56.1 ¶ 48; Defs.' Resp. 56.1 ¶ 48.)[1]  In August 1997, at the age of

70, he started working for Defendant Putnam/Northern Westchester Board of Cooperative

---

[1]        "Pl.'s 56.1" refers to Plaintiff's Response to Defendants' Local Rule 56.1 Statement and
Counter-Statement.  (Doc. 23.)  "Defs.' Resp. 56.1" refers to Defendants' Response to Plaintiff's
Counter-Statement in Opposition to Motion for Summary Judgment.  (Doc. 29.)

Education Services ("BOCES") as a part-time courier, or van-driver.  (Pl.'s 56.1 ¶ 48; Defs.'

Resp. 56.1 ¶ 48; Pl.'s Dep. at 48, 123.)[2]  At various times after 1997, Plaintiff applied for and

was denied a full-time position as a custodial worker at BOCES.  (Pl.'s 56.1 ¶¶ 69, 71, 73, 75–

78, 82.)  Plaintiff identifies eight instances on which there were vacancy notices posted for the

custodial worker position and he applied:  (1) in or about 1999 or 2000, (2) once again later in

2000, (3) on May 12, 2003, (4) on or about August 8, 2003, when there were two vacancies, (5)

on August 9, 2005, (6) on September 7, 2005, (7) on October 4, 2006, and (8) on July 3, 2007.

(*Id.* ¶¶ 69, 71, 73, 75, 77, 78, 81.)[3]

       BOCES employs full-time custodial workers in its Operations & Maintenance

Department, and assigns them to day or evening shifts, as well as to specific locations in BOCES

buildings, and charges them with building cleaning, maintenance, and repair duties.  (Defs.' 56.1

¶¶ 8, 10; Pl.'s 56.1 ¶¶ 8, 10.)[4]  The job description for the custodial worker position lists the

following as "required knowledge, skills, abilities and attributes":

> Working knowledge of building cleaning practices, supplies and equipment and
> the ability to use them economically and efficiently; familiarity with the operation

---

[2]     "Pl.'s Dep." refers to the Deposition of Plaintiff Anthony Antunes, taken on October 21, 2009.  (Affirmation of Drita Nicaj in Opposition to Motion for Summary Judgment ("Nicaj Aff."), (Doc. 22), Ex. 30.)

[3]     Defendants dispute the relevance and admissibility of the earlier applications, as the 2007 failure to promote is the basis for the age discrimination claim in this case.  (Defs.' Resp. 56.1 ¶¶ 69, 71, 73, 75, 77, 78, 81.)  Evidence of Plaintiffs' multiple applications for the custodial worker position is relevant insofar as it is offered to meet his burden of demonstrating that Defendants' purportedly legitimate, nondiscriminatory reason for their failure to promote him was pretextual, as explained in greater detail below.  I consider them only for whatever light they may shed on that issue, and I address the soundness, or lack thereof, of the legal arguments they purportedly support below.

[4]     "Defs.' 56.1" refers to Defendants' Statement Under Local Rule 56.1 in Support of Motion for Summary Judgment.  (Doc. 17.)

and maintenance of heating systems; ability to make minor plumbing, electrical, carpentry, and mechanical repairs and perform a variety of routine maintenance tasks; ability to understand and carry out simple oral and written directions; willingness to perform custodial and other manual tasks; thoroughness; dependability; physical condition commensurate with the duties of the position.

(Micolo Aff. Ex. A.)[5]  The job description also notes that there is no "minimum acceptable training and experience" for the position.  (*Id.*)

Plaintiff had held various other jobs prior to his employment with BOCES that, he maintains, qualified him for the position of custodial worker.  Before 1944, he worked in a slaughterhouse, where his responsibilities included cleaning walls and horse stables.  (Pl.'s 56.1 ¶ 50.)  From 1944 to 1946, he served in the U.S. Navy, during which time he was required to clean both personal and shared living spaces.  (*Id.* ¶ 52.)  From 1951 to 1991, he was employed in various capacities for New York Seven-Up/Joyce Beverages, including as Operations Manager, Division Sales Manager, Sales & Operations Manager, Sales Manager, and Distributor in various parts of the New York metropolitan area, and from 1991 to 1996, he worked as a Fleet Operations Manager for The Coca Cola Bottling Company of New York, Inc.  (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)  Plaintiff's responsibilities at various times while working for those two companies included performing and/or directing the cleaning of various product displays, warehouses, and delivery trucks.  (Pl.'s 56.1 ¶¶ 55–57.)[6]

Plaintiff was never promoted to custodial worker.  Instead, over the period during which he applied for the promotion, every custodial worker vacancy was filled with a part-time cleaner

---

[5]     "Micolo Aff." refers to the Affidavit of Susan Micolo in Support of Motion for Summary Judgment.  (Doc. 20.)

[6]     Defendants dispute the relevance and admissibility of these facts, (Defs.' Resp. 56.1 ¶¶ 50, 52, 55–56), but, as explained below, they are relevant to demonstrate that Plaintiff was qualified for the promotion he was denied, which is the third element of Plaintiff's *prima facie* case of employment discrimination.

who was already employed by BOCES. (Defs.' 56.1 ¶ 21; Pl.'s 56.1 ¶ 21.) Those part-time

cleaners selected over Plaintiff include the following:

| Year Selected as Custodial Worker | Name | Age when Selected | Prior Experience as Part-Time Cleaner |
|---|---|---|---|
| 2001 | Edward Walsh | 51 | 5 years |
| 2003 | Jason Wolfe | 24 | 7 years |
| 2003 | Philip Nouvion | 25 | 5 years |
| 2005 | Charles Costin | 23 | 1 year, 10 months |
| 2006 | Guillermo Berrueco | 43 | 2 years, 9 months |
| 2007 | Nicolas Zamora | 27 | 2 years, 5 months |

(Defs.' 56.1 ¶ 28; Pl.'s 56.1 ¶ 28; Micolo Aff. ¶¶ 11, 14–16, 19; Micolo Supp. Aff. ¶¶ 2–3.) [7]

Plaintiff has adduced evidence of various statements that were made to him by BOCES

personnel over that same period. For example, when Plaintiff first interviewed for the custodial

worker position in 1999 or 2000, then-Director of Facilities and head of BOCES's Operations &

Maintenance Department, Bernard Collins, explained to Plaintiff that BOCES was seeking a

custodian who would remain in the position for four to five years. (Pl.'s 56.1 ¶ 69.) Sheila

Campbell, secretary to Collins's successor, Defendant Vincent Garnot, (Garnot Aff. ¶ 1),[8] told

Plaintiff several times that he was old enough to be her father, (Pl.'s 56.1 ¶ 63). Darwin

Delacruz, a senior custodial worker at BOCES, asked Plaintiff several times how old he was,

what he had for breakfast and lunch, and why he was still working. (Id. ¶¶ 64, 79–80.) In March

2002, Plaintiff applied for and accepted a part-time position as a library clerk in the BOCES

Copy Center, a position outside the Operations & Maintenance Department, and, upon

---

[7]      "Micolo Supp. Aff." refers to the Supplemental Affidavit of Susan Micolo in Support of
Motion for Summary Judgment. (Doc. 28.)

[8]      "Garnot Aff." refers to the Affidavit of Vincent Garnot in Support of Motion for
Summary Judgment. (Doc. 25.)

discovering this, Garnot met with Plaintiff and told him that "you work for me and me alone," prompting Plaintiff to withdraw from this other position. (*Id.* ¶ 61.)[9]

The specific employment action that serves as the basis for Plaintiff's claim is Defendants' failure to promote Plaintiff to the evening-shift custodial worker position in July 2007. (Pl.'s 56.1 ¶ 81; Defs.' Resp. 56.1 ¶ 81; *see* Pl.'s Mem. at 4 (referring to the July 3, 2007 vacancy as "[t]he [f]ailure to [h]ire [w]hich is at [i]ssue").)[10] On July 10, 2007, Plaintiff wrote a letter to Garnot attaching the July 3, 2007 vacancy notice[11] for the custodial worker position and requesting that Garnot, "Please accept this memo as my application for the attached position

---

[9]     Defendants dispute the relevance of these various statements, (Defs.' Resp. 56.1 ¶¶ 61, 63, 64, 69, 79–80), but, as explained below, these allegedly age-discriminatory comments are offered to support Plaintiff's argument that Defendants' purportedly legitimate, nondiscriminatory reason for their failure to promote him was pretextual. Defendants also object to Delacruz's comments as inadmissible hearsay, but they are not offered for their truth, but rather to demonstrate Delacruz's purportedly discriminatory state of mind. *See* Fed. R. Evid. 801(c); *see also Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("[T]he mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not hearsay."). I do, however, disregard the statement in Plaintiff's 56.1 submission that Collins's comment regarding seeking a custodian who would remain in the position for four to five years "clearly indicat[ed] that [Collins] did not expect Antunes to remain that long given his age." (Pl.'s 56.1 ¶ 69.) I need not consider statements in a Local Rule 56.1 submission that are "legal conclusions in the guise of an undisputed statement of fact." *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 448 n.5 (S.D.N.Y. 2005).

[10]     "Pl.'s Mem." refers to the Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (Doc. 24.)

[11]     The vacancy notice uses different language than the job description quoted above, though it is nonetheless consistent with the job description. The vacancy notice lists various custodial worker responsibilities, including "[h]andl[ing] daily custodial care of assigned BOCES facility" and "assign[ing] and train[ing] part-time cleaners," as well as the following qualifications: "[m]inimum of two (2) years of experience in building cleaning and general maintenance," "[m]ust be able to follow written and verbal directions," "[m]ust be able to give good written and verbal directions," and "[m]ust be physically able to perform all job-related duties." (Plaintiff Anthony Antunes's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Aff."), (Doc. 21), Ex. 15.)

posted.  Resume on file!"  (Garnot Aff. Ex. B.)  Garnot wrote Plaintiff on July 18, 2007

confirming receipt of the July 10, 2007 letter and stating that "[u]pon review, it was determined

that you do not have the custodial experience that is required for this particular position."  (*Id.*

Ex. D.)  Plaintiff was not interviewed for the position thereafter.  (Pl.'s 56.1 ¶ 82; Defs.' Resp.

56.1 ¶ 82.)

The promotion was instead given to part-time cleaner Nicolas Zamora, (Defs.' 56.1 ¶ 28;

Pl.'s 56.1 ¶ 28), who, as indicated above, was 27 years old when he was hired and had worked as

part-time cleaner for BOCES for the preceding two years and five months in the same building to

which he would be assigned as custodial worker, (Defs.' 56.1 ¶¶ 34, 45).  As part-time cleaner,

Zamora's duties included cleaning, mopping, and taking out the garbage in the BOCES building

to which he was assigned.  (Pl.'s 56.1 ¶ 90; Defs.' Resp. 56.1 ¶ 90.)[12]  In addition to serving as

part-time cleaner, Zamora also served for a period of time as interim evening-shift custodial

worker, after the full-time evening-shift custodial worker had been transferred to the day shift.

(Defs.' 56.1 ¶ 46.)  During the selection process for the custodial worker position, Zamora

produced two very positive references, one from a custodial worker who supervised his work as

part-time cleaner, and one from a non-custodial staff member at BOCES with whom he had

interacted.  (*Id.* ¶ 44.)  He also earned high interview marks from Garnot and the two then-senior

---

[12]     Defendants dispute that Zamora's duties as part-time cleaner were limited to these
activities only, and point to a portion of his affidavit where he discusses waxing floors and
shampooing carpets, (Defs.' Resp. 56.1 ¶ 90), but it is unclear from the deposition transcript
whether Zamora was explaining that he performed these duties in his capacity as part-time
cleaner or full-time custodial worker, (Deposition of Nicolas Zamora, (Nicaj Aff. Ex. 33), at 8–
9)).  Construing this ambiguity in the record in favor of Plaintiff, as is necessary on a motion for
summary judgment, *see Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009), I read Zamora's
deposition transcript as stating that his duties as part-time cleaner were limited to cleaning,
mopping, and taking out the garbage.

custodial workers (including Darwin Delacruz), whom Garnot involved in all interviews for non-senior custodial worker positions.  (*Id.*)[13]

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 19, 2007, alleging that Defendants discriminated against him on the basis of his age by failing to promote him to the full-time custodial worker position.  (Pl.'s 56.1 ¶ 93; Defs.' Resp. 56.1 ¶ 93; *see* Pl.'s Aff. Ex. 18.)  Meanwhile, Zamora resigned from his custodial worker position effective September 26, 2008, after having been told by BOCES that he would be terminated for poor work performance.  (Micolo Aff. ¶ 22, Ex. K.)

Plaintiff filed the Complaint in the instant case on March 30, 2009, asserting a claim against BOCES for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, as well as a claim against both Defendants for age discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*.  (Doc. 1.)  On July 2, 2010, Defendants moved for summary judgment.  (Doc. 16.)

---

[13]     Plaintiff denies either the truth or materiality of these facts—namely, that Zamora had worked as cleaner for two years and five months, had served as interim evening-shift custodial worker, produced positive references, and earned high interview marks.  (Pl.'s 56.1 ¶¶ 44–46.)  First, such facts are material in that they are offered by Defendants to satisfy their burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Second, the evidence to which Plaintiff points in an attempt to refute such facts does not support the denial.  Plaintiff points only to portions of an affidavit of another BOCES employee who Plaintiff claims was involved in the same selection process in which Zamora was involved, (*id.*), but that affidavit does not in any way discuss Zamora's employment history with BOCES or his interview process for the custodial worker position, (*see* Affidavit of Robert Totah ("Totah Aff."), (Doc. 18), ¶¶ 3–14.  As such, I disregard Plaintiff's denial of these facts, *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here the cited materials do not support the factual assertions in the [Local Rule 56.1] Statements, the Court is free to disregard the assertion.") (internal quotation marks omitted), and I consider Defendants' facts admitted, *see* Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

Plaintiff later withdrew his NYSHRL claim, (Pl.'s Mem. at 1 n.1), and it is therefore dismissed with prejudice.[14]

## II.     DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

---

[14]     I would in any event have dismissed the NYSHRL claim for the same reasons I dismiss the ADEA claim, as they are analyzed under the same standard. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009).

and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).  Where, as here, an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." *Holcomb*, 521 F.3d at 137.  Nevertheless, a plaintiff "is not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind," *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988), and thus "[e]ven in the discrimination context, . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb*, 521 F.3d at 137.  He or she must provide "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Dister*, 859 F.2d at 1114 (internal quotation marks omitted).  Indeed, "[i]t is now beyond cavil that summary

judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *see Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("salutary purposes of summary judgment" would be defeated if "mere incantation of intent or state of mind" could defeat motion).

### B.        Plaintiff's Age Discrimination Claims

The ADEA prohibits discrimination in employment on the basis of age, *see* 29 U.S.C. § 623(a)(1), and ADEA claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *see Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 570 (S.D.N.Y. 2010).  Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination, which in the ADEA context may be satisfied by showing:  "(1) that [the plaintiff] was within the protected age group, (2) that [the plaintiff] was qualified for the position, (3) that [the plaintiff] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Gorzynski*, 596 F.3d at 107; *accord Mattera*, 740 F. Supp. 2d at 571.  "The burden of establishing a prima facie ADEA case has been characterized as 'minimal' and '*de minimis*.'"  *Hird-Moorhouse v. Belgian Mission to United Nations*, No. 03-9688, 2010 WL 3910742, at *4 (S.D.N.Y. Oct. 5, 2010) (quoting *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).  It is, however, a "not inconsequential" burden.  *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004) (internal citations omitted).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."  *Leibowitz*, 584 F.3d at 499 (internal quotation marks omitted).  The defendant's burden at that

juncture is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000).  The defendant, in other words, need not prove nondiscrimination; it need only "introduce evidence, which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original).

Should the defendant satisfy that requirement, the burden then shifts back to the plaintiff to demonstrate that a reasonable jury could find, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gorzynski*, 596 F.3d at 106 (internal quotation marks omitted); *accord Holowecki v. Fed. Express Corp.*, 382 F. App'x 42, 44 (2d Cir. 2010); *Sullivan v. Brodsky*, 380 F. App'x 21, 21 (2d Cir. 2010); *Waters v. Gen. Bd. of Global Ministries*, No. 09-7241, 2011 WL 723591, at *10 (S.D.N.Y. Feb. 25, 2011); *Mattera*, 740 F. Supp. 2d at 571.[15]  In determining whether the plaintiff has satisfied this burden, the Court must consider the sum of all evidence of discrimination "in its totality, rather than examining specific aspects of evidence in isolation."  *Ellenbogen v. Projection Video Servs., Inc.*, No. 99-11046, 2001 WL 736774, at *8 (S.D.N.Y. June 29, 2001) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)).

---

[15]      As the Court in *Mattera v. JPMorgan Chase Corp.* explained, the third step of the *McDonnell Douglas* analysis has changed in the wake of *Gross v. FBL Financial Services*, 129 S. Ct. 2343 (2009).  *See* 740 F. Supp. 2d at 570 n.8.  Prior to *Gross*, the third step in the analysis was "whether the evidence in [the] plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by age discrimination."  *Id.* (internal quotation marks omitted).  *Gross*, however, replaced that inquiry with the but-for standard articulated above, and the Second Circuit has since made clear that that the basic *McDonnell Douglas* burden-shifting framework remains intact, with *Gross*'s modification.  *Id.* (citing *Gorzynski*, 596 F.3d at 106).

### 1.     *Prima Facie* Case of Age Discrimination

Defendants here do not contest the first and third elements of Plaintiff's *prima facie* case of age discrimination.  (Defs.' Mem. at 7.)[16]  The ADEA protects people over the age of forty, *see* 29 U.S.C. § 631(a), and Plaintiff was eighty years old when he was denied the full-time custodial worker position in July 2007, (*see* Pl.'s 56.1 ¶ 48; Defs.' Resp. 56.1 ¶ 48).  Moreover, it is well-settled that a failure to promote constitutes an adverse employment action under the ADEA.  *See Rouse v. City of N.Y.*, No. 08-7419, 2009 WL 1532054, at *6 (S.D.N.Y. June 2, 2009).  Defendants do contest, however, that Plaintiff was qualified for the position and that the circumstances surrounding Defendants' failure to promote him gave rise to an inference of age discrimination.  (Defs.' Mem. at 7.)

### a.     Qualified for the Position

In determining whether an employee who applied for and was denied a promotion to a particular position was "qualified" for that position, the Second Circuit has held that "being 'qualified' refers to the criteria the employer has specified for the position."  *Williams*, 368 F.3d at 127 (quoting *Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997)) (internal quotation marks omitted); *accord Santos v. Engelhard Corp.*, No. 05-203, 2009 WL 2432736, at *8 (S.D.N.Y. Aug. 6, 2009).  Accordingly, "in order to establish a prima facie case of discrimination, [Plaintiff] must show that [ ]he met the defendant's criteria for the position."  *Williams*, 368 F.3d at 127.

Though Plaintiff emphasizes that the job description on file with BOCES for the custodial worker position indicated that there was no "minimum acceptable training and

---

[16]     "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Motion for Summary Judgment.  (Doc. 26.)

experience" for the position, (Pl.'s Mem. at 10–11), the job description also noted that applicants' "required knowledge, skills, abilities and attributes" included, among other things, a "[w]orking knowledge of building cleaning practices, supplies and equipment and the ability to use them economically and efficiently; familiarity with the operation and maintenance of heating systems; [and the] ability to make minor plumbing, electrical, carpentry, and mechanical repairs and perform a variety of routine maintenance tasks."  Nonetheless, Plaintiff points to his service in the U.S. Navy, as well as his pre-BOCES work experience as slaughterhouse worker and as manager for both New York Seven-Up/Joyce Beverages and Coca Cola, as providing him with the necessary knowledge, skills, and abilities for the job.  Plaintiff testified in his deposition to having performed various custodial or custodial-like duties in connection with those jobs, including having cleaned animal stables and slaughterhouses, (Pl.'s Dep. at 198); cleaned, as well as directed the cleaning of, naval barracks, latrines, and carpenter's facilities, (*id.* at 28–33); performed carpentry, (*id.* at 33–34); cleaned warehouse floors and delivery trucks, (*id.* at 21, 24); overseen the daily maintenance of warehouse facilities, (*id.* at 36–39); and managed teams of plumbers, carpenters, painters, and mechanics, (*id.* at 45–47).  Though Plaintiff has not adduced specific evidence of each area of knowledge, skill, and ability enumerated in the BOCES job description, he has nonetheless demonstrated considerable experience in the areas of cleaning, maintenance, and carpentry.  Given that, as noted above, the burden at this stage is *de minimis*, Plaintiff has demonstrated that he was qualified for the custodial worker position.

b.      **Inference of Discrimination**

In determining whether the evidence adduced gives rise to an inference of age discrimination, it is generally sufficient to demonstrate that the plaintiff was passed over for a candidate "'substantially younger'" than the plaintiff.  *Rouse*, 2009 WL 1532054, at *6 (quoting

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 187 (2d Cir. 2006)).  Plaintiff satisfies that burden here, as he was eighty years old at the time he applied for the custodial worker position, and was passed over for the twenty-seven-year-old Zamora.  *See, e.g.*, *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (replacement of sixty-year-old employee by thirty-one-year-old employee satisfied fourth element of *prima facie* case); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 579 (S.D.N.Y. 2008) (promotion of employee fourteen years younger created inference of discrimination); *Ranieri v. Highland Falls-Fort Montgomery Sch. Dist.*, 198 F. Supp. 2d 542, 544 (S.D.N.Y. 2002) (replacement of plaintiff with employee ten years younger sufficient).[17]

### 2.      Legitimate, Nondiscriminatory Reason

Because Plaintiff has established a *prima facie* case of age discrimination, the burden shifts to Defendants to demonstrate a legitimate, nondiscriminatory reason for promoting Zamora in place of Plaintiff.  Defendants here claim that Zamora had superior qualifications for the position of custodial worker because he had worked as a part-time cleaner for nearly two and a half years in the same building at BOCES where he would work as a custodial worker, and because he had filled in as interim custodial worker after his supervisor changed shifts.  (Defs.'

---

[17]      Although it is also necessary that Defendants have knowledge of the age discrepancy for it to give rise to an inference of age discrimination, *see Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 79 (2d Cir. 2005), BOCES personnel files indicate its employees' ages, (*see, e.g.*, Micolo Aff. Ex. G), and, in any event, Defendants do not claim that they were unaware of the age discrepancy, *see, e.g.*, *Mattera*, 740 F. Supp. 2d at 573 n.10 (accepting defendants' knowledge of age discrepancy where "defendants do not claim not to know plaintiff's age").  Even if the decision makers did not know Plaintiff's exact age, they were surely aware of his approximate age and that he was much older than Zamora.  Therefore, this requirement is satisfied.

While being passed over for a younger candidate is sufficient to create an inference of discrimination, it is *not* sufficient to demonstrate that a defendant's asserted nondiscriminatory reasons for the failure to promote are pretextual.  *See, e.g.*, *Nathe v. Weight Watchers Int'l, Inc.*, No. 06-4154, 2010 WL 3000175, at *5 (S.D.N.Y. July 26, 2010); *Milano v. Astrue*, No. 05-6527, 2008 WL 4410131, at *32 (S.D.N.Y. Sept. 26, 2008) (adopting report and recommendation), *aff'd*, 382 F. App'x 4 (2d Cir. 2010).

Mem. at 10.)  Defendants claim that, although the custodial worker job description did not require applicants to have served as part-time cleaners, part-time cleaner applicants were usually better qualified for the custodial worker job than were non-part-time cleaner applicants due to their familiarity with the position.  Namely, Defendants claim that part-time cleaners:  (1) perform most of the duties that a custodial worker performs, aside from supervising others; (2) occasionally serve as interim custodial workers (as Zamora did); (3) are familiar with the preferred cleaning and maintenance practices and procedures for the BOCES school buildings; (4) have working relationships with other part-time cleaners and custodial workers with whom they would work and whom they would manage; (5) are acquainted with other BOCES staff with whom they would interact on the job; and (6) have already worked for and been evaluated by the Director of Facilities—who, at the relevant time, was Garnot.  (Defs.' 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.) BOCES's preference for filling custodial worker vacancies with part-time cleaners was not limited to Zamora's promotion; indeed, as indicated above, BOCES valued part-time cleaners' experience so much that from 2001 onward, each custodial worker vacancy was filled by a former part-time cleaner.  Defendants have thus satisfied their burden of production in articulating a legitimate, nondiscriminatory reason for failing to promote Plaintiff.  *See, e.g.*, *Wharff v. State Univ. of N.Y.*, No. 09–4534, 2011 WL 891727, at *1 (2d Cir. Mar. 16, 2011) (promotion of "employees [that] had previously assumed many of the responsibilities of the supervisors they replaced, and had succeeded in those new roles before being recommended for and receiving their promotions" was legitimate, nondiscriminatory reason for failing to promote plaintiff that did not demonstrate similar experience); *Findlay v. Reynolds Metals Co.*, 82 F. Supp. 2d 27, 40 (N.D.N.Y. 2000) ("preference awarded to another employee who, unlike

Plaintiff, was a member of the department offering the [promotion]" was legitimate, nondiscriminatory reason for failing to promote plaintiff).

### 3.    Pretext

Because Defendants have articulated a legitimate, nondiscriminatory reason for their failure to promote Plaintiff, Plaintiff can no longer rest on his *prima facie* case, but must instead demonstrate that Defendants' proffered nondiscriminatory reason was pretextual—that is, that discrimination was the actual reason for the failure to promote.  Plaintiff must "raise[ ] sufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [Defendants'] decision" not to promote him.  *Gorzynski*, 596 F.3d at 107.  In an attempt to satisfy his burden at this stage, Plaintiff puts forth arguments regarding (1) Defendants' purported policy of promoting part-time cleaners to custodial worker positions, (2) various purportedly age-discriminatory comments by BOCES employees; and (3) the circumstances surrounding the hiring of Zamora's replacement as custodial worker.  I consider each argument in turn.

### a.    Part-Time Cleaner Promotion Policy

Plaintiff argues, first, that there existed no policy at BOCES of promoting part-time cleaners to custodial worker because Defendants did not advertise such a policy.  Specifically, Plaintiff argues that vacancy notices posted for the positions for which Plaintiff applied did not specify that part-time cleaner experience was required, or even preferred, (Pl.'s Mem. at 16), and that if such a policy had existed, Defendants would have notified Plaintiff so that he either could have stopped submitting futile applications for custodial worker positions or could have applied for a part-time cleaner position with a view toward applying for custodial worker thereafter, (*id.* at 17).  This argument is a nonstarter.  Plaintiff's argument that Defendants' decision not to

16

announce such a policy was inefficient or even unfair does not speak to whether the policy actually existed.  It is beyond dispute—indeed, *Plaintiff himself has admitted*—that, whether as a formal policy or an informal preference, Defendants engaged in the practice of hiring part-time cleaners as custodial workers from 2001 through 2009.  (Pl.'s 56.1 ¶ 28.)[18]  Moreover, Defendants do not maintain that the practice of promoting part-time cleaners was a formal policy, so it is not surprising that such experience was not part of the formal job description.

Moreover, while the job description and vacancy notice for custodial worker did not indicate that experience as part-time cleaner was necessary, they did indicate, among other things, that applicants required a "[w]orking knowledge of building cleaning practices, supplies and equipment and the ability to use them economically and efficiently," (Micolo Aff. Ex. A), and would have to "assign and train part-time cleaners," (Pl.'s Aff. Ex. 15)—knowledge and abilities that part-time cleaners would possess because, among other reasons, they perform many of the same duties as custodial workers and are already familiar with BOCES cleaning and maintenance practices and procedures.  (Defs.' 56.1 ¶ 18.)  Therefore, there is no basis to conclude that the fact that part-time cleaner experience was not advertised rendered Defendants' selection of Zamora, based upon that obviously useful experience, in any way discriminatory. *See, e.g.*, *Ferguson v. Barram*, No. 98-5368, 2000 WL 375243, at \*6 n.5 (S.D.N.Y. Apr. 11,

---

[18]      In addition, both Garnot and Susan Micolo, the Director of Human Resources and Administrative Services for BOCES, were told of this practice when they began in their positions with BOCES.  (Garnot Aff. ¶ 8; Micolo Aff. ¶ 9; *see* Defs.' 56.1 ¶ 15.)  While what they were told may not be admissible for the truth of the matter asserted—that such a practice was in place—the statements can be considered for the fact that they were said.  *See, e.g.*, *United States v. Press*, 336 F.2d 1003, 1011 (2d Cir. 1964) ("statements inadmissible to prove the truth of what they assert may be admitted if the fact of the assertion is in itself relevant").  That the statements were made is relevant because it tends to show that the practice of hiring part-time cleaners—the existence of which is in any event supported by years of actual hires—is not a pretext cooked up to defend this lawsuit.

2000) ("Plaintiff argues that the vacancy announcement did not explicitly state that budget experience was required [for the position].  However, the vacancy announcement did list the [position's] duties as including preparing and reviewing costs estimates for building repairs, improvements and modernization and analyzing contractors' claims, duties which would certainly benefit from budget and financial experience.  Thus, there is no basis to conclude that the fact that this qualification was not explicitly listed rendered [the] selection of [an employee other than plaintiff], in part based on this useful experience, in any way discriminatory.").

Plaintiff also points out that part-time cleaners had to be trained once they were promoted to custodial workers, and that Zamora and at least one other part-time cleaner who was promoted to custodial worker were either forced to resign or were terminated.  (Pl.'s Mem. at 19–20.) Plaintiff seems to suggest that these facts demonstrate that, contrary to what Defendants claim, part-time cleaners were not the best qualified candidates for custodial worker positions.  But regardless of whether Zamora ended up performing poorly *after* he was hired, he nonetheless exhibited what BOCES determined to be important qualifications for the position—namely, satisfactory performance and experience as part-time cleaner—*at the time he was hired*.  And, in any event, courts afford employers a great deal of discretion in assessing the qualifications of job applicants.  *See, e.g.*, *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (court "must respect the employer's unfettered discretion to choose among qualified candidates" when a court is evaluating whether employer's purported reason was pretextual) (internal quotation marks omitted); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 582 (S.D.N.Y. 2008) ("We are not to act as a super personnel department, second-guessing the merits of defendants' legitimate business decisions.") (internal quotation marks omitted); *O'Leary v. N.Y. State Unified Court Sys.*, No. 05-6722, 2007 WL 2244483, at *7 (S.D.N.Y. Aug. 6, 2007) ("Defendant's

decisions regarding the professional experience and characteristics sought in a candidate, as well as the search committee's evaluation of Plaintiff's qualifications, are entitled to deference.") (internal quotation marks omitted); *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 320 (W.D.N.Y. 1999) ("Whether plaintiff considers himself to have been the better candidate, . . . indeed, even whether he was the better candidate[, ]is not the issue.  What matters is why the employer did what it did, not whether it was wise to do so.").

In order to survive summary judgment, a plaintiff asserting that his employer's proffered explanation for the failure to promote is pretextual based on his purportedly stronger qualifications than those of the person promoted in his place must demonstrate that his qualifications are "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Byrnie*, 243 F.3d at 103 (internal quotation marks omitted); *accord Diello v. Potter*, No. 10-1776, 2011 WL 802323, at *1 (2d Cir. Mar. 9, 2011); *Witkowich*, 541 F. Supp. 2d at 582.  This is a "weighty burden."  *Byrnie*, 243 F.3d at 103. Although Plaintiff here has demonstrated that he has maintenance and managerial experience from prior jobs, and that he worked in such jobs for many years longer than did Zamora, he has not adduced evidence demonstrating that he has cleaning and maintenance experience in an environment similar to that of BOCES.  Indeed, Plaintiff's building cleaning experience is limited to animal stables and slaughterhouses, naval living quarters, and beverage warehouses. Zamora, although having had only two years and five months of cleaning and maintenance experience, spent that entire period of time cleaning and maintaining the same BOCES building in which he would later work as custodial worker, and for part of that time even assumed the duties of his predecessor custodial worker.  Given Zamora's especially relevant work experience,

Plaintiff cannot be said to have demonstrated that his qualifications were "so superior" to Zamora's that a reasonable jury could find that Defendants' reasons for selecting Zamora's instead of Plaintiff were pretextual.  *See, e.g.*, *Lukasiewicz-Kruk v. Greenpoint YMCA*, No. 07-2096, 2009 WL 3614826, *12 (E.D.N.Y. Oct. 30, 2009) (plaintiff's qualifications not "so superior" where position she applied for involved "responsibility for full operations of the Greenpoint YMCA, including the Membership, Health & Wellness and Aquatics divisions, and management of the guest rooms at the facility" because, although plaintiff had "experience[ ] in the Membership, Health & Wellness and Aquatics divisions, and . . . familiarity with the facility's guest rooms," promotee had previously "[taken] over guest room responsibilities upon [another employee's] departure in 2004, and thus had experience with guest room management"); *Santos*, 2009 WL 2432736, at *11 (plaintiff's qualifications for purchasing storeroom supervisor position not "so superior" because, although plaintiff had a college degree and was "somewhat familiar" with position's responsibilities, promotee "was working as a purchasing assistant *in the same department*, where she was already performing many of the duties of the purchasing storeroom supervisor") (emphasis in original).

Where, as here, the qualifications discrepancy between the plaintiff and the person selected for the job is insufficient to create a question of material fact on its own, "it retains its probative value and should be considered along with the plaintiff's other evidence of discrimination."  *Witkowich*, 541 F. Supp. 2d at 583.[19]  I therefore turn to Plaintiffs' remaining arguments, bearing in mind the evidence he has presented on the issue of qualifications.

---

[19]     Plaintiff, although he does not explicitly so argue, and although he has focused on the July 2007 failure to promote as the basis for his claim, seems to suggest that Defendants' repeated instances of passing him over for promotion in favor of allegedly less-qualified part-time-cleaner applicants also demonstrates pretext.  "While there appears to be little Second Circuit case law addressing the issue of whether, if large enough, the sheer number of non-

### b.      Allegedly Age-Discriminatory Comments

In addition to disputing Defendants' assessment of his qualifications, Plaintiff also points to various comments made to him by BOCES employees that he claims were age-discriminatory or otherwise indicated that he would not be hired as custodial worker.  Specifically, Plaintiff points to the following comments:  (1) Garnot's secretary Sheila Campbell's comment that Plaintiff was old enough to be her father; (2) senior custodial worker Darwin Delacruz's questions regarding how old Plaintiff was, what he had for breakfast and lunch, and why Plaintiff was still working; (3) Garnot's predecessor Bernard Collins's comment that BOCES was seeking a custodial worker who would remain in the position for four to five years; and (4) Garnot's comment, "You work for me and me alone."

In determining whether allegedly age-discriminatory remarks are sufficiently probative of age discrimination such that a jury could reasonably find that a defendant failed to promote a plaintiff because of his age, the Court should consider the remarks "in the context of all the evidence."  *Id.* at 584.  Specifically, the Court should consider the following factors:

> (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made.

*Id.* at 585 (quoting *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288, 295 (S.D.N.Y. 2005)) (internal quotation marks omitted); *see also Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07-11316, 2009 WL 900739, at *4 (S.D.N.Y. Apr. 3, 2009) ("The remark must be considered in context—the more remote and oblique the remarks are in relation to the

---

selections can rebut an employer's proffered non-discriminatory . . . reasons for its actions, this Court has previously granted summary judgment for employers in cases where a plaintiff was bypassed for positions on a significant number of occasions."  *Milano*, 2008 WL 4410131, at *38 (collecting cases).

employer's adverse action, the less they prove that the action was motivated by discrimination, while the more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.  An important, though not determinative, factor is whether the remark was made by a person who is involved in the decision-making process with respect to the plaintiff.") (alteration, citation, and internal quotation marks omitted).

I consider first Campbell's and Delacruz's comments.  Although the comments, on their face, refer to Plaintiff's age, they are not otherwise probative of age discrimination.  Plaintiff testified in his deposition that Campbell made her observation to Plaintiff several times after 2000, but he was unable to narrow the timeframe for those comments or provide any context for them.  (*See* Pl.'s Dep. at 68.)  It is clear, though, that the comments were not made in a context that would suggest that they in any way affected Defendants' decision not to promote Plaintiff.  Plaintiff testified only that Campbell was an "office manager" and that she was "not [at] a high level but she has got some responsibility."  (*Id.* at 139.)[20]  And although Campbell served as a secretary to Garnot, and Garnot was in charge of promotion decisions within the Operations & Maintenance Department, Plaintiff does not adduce any evidence that would suggest Campbell was consulted regarding hiring or promotion decisions or that she was in any way involved in Garnot's decision-making processes.  Although statements by non–decision makers normally do not demonstrate discrimination, *see Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375,

---

[20]      Micolo swore to the fact that Campbell "had no managerial responsibilities and supervised a single employee, an Office Assistant," and "had no responsibilities as concerned the plaintiff or the selection of custodial workers."  (Reply Affidavit of Susan Micolo in Support of Motion for Summary Judgment ("Micolo Reply Aff."), (Doc. 31), ¶ 3.)  To the extent there exists a factual ambiguity as to Campbell's managerial status, I construe those facts in Plaintiff's favor, as I must on a defendant's motion to dismiss.  *See Sledge*, 564 F.3d at 108.

388 (S.D.N.Y. 2009), they may be probative of discrimination where they indicate invidious

discrimination or where they paint a picture of pervasive corporate hostility toward a plaintiff,

*see Seltzer*, 356 F. Supp. 2d at 296.  That is not the case here.  Campbell's remarks were not

invidious or demonstrative of corporate hostility, and the factors overwhelmingly support the

conclusion that her comments are not probative of age discrimination.

Delacruz's comments are similarly insufficient.  Although Delacruz's comments, as with

Campbell's statements, facially reference Plaintiff's age, their context and timing do not imply

age discrimination.  Plaintiff testified during his deposition that

> [Delacruz] would often ask me how old I am or what do you eat for breakfast,
> what do you have for lunch.  I move tons of freight every day and he couldn't
> understand how I could do that at my age. . . . [H]e would always infer why are
> you still working . . . .

(Pl.'s Dep. at 134–35.)  Plaintiff testified, in connection with these statements, that Delacruz

"wouldn't recognize my ability and he wouldn't voice an opinion about it."  (*Id.* at 134.)  But

Plaintiff's own description of these comments indicate just the opposite:  that Delacruz, though

surprised by Plaintiff's abilities given his age, recognized that Plaintiff was nonetheless able to

perform the tasks, like moving freight, that were required of him.  It is hard to imagine how such

statements, which seem to express admiration for Plaintiff's abilities,[21] could be interpreted as

age-discriminatory.  Even if they could, Plaintiff does not adduce evidence demonstrating that

Delacruz's comments occurred in connection with Plaintiff's application for the custodial worker

position or occurred with any temporal proximity to the July 2007 failure to promote.  Further,

although Delacruz participated in joint interviews for the custodial worker positions, it was

---

[21]     Plaintiff's claim that Delacruz was implying that he was surprised Plaintiff was still working seems to be based on Plaintiff's subjective impression, but assuming that Plaintiff is correct, being impressed that a septuagenarian or octogenarian was successfully performing a job apparently requiring substantial physical labor hardly supports an inference of discrimination.

Garnot who made the final recommendations to the human resources department regarding applicants to be selected.  (Defs.' 56.1 ¶¶ 24–25.)[22]  In any event, Plaintiff was not even interviewed for the July 2007 vacancy which forms the basis for his failure to promote claim—as explained above, he was merely advised by Garnot in a letter dated July 18, 2007 that he did not have sufficient experience for the job—and Plaintiff had not adduced any evidence demonstrating that Delacruz participated in the decision to write or send that letter.  Nonetheless, even assuming that Delacruz can be considered a decision maker, that status would not be determinative, given the lack of any connection between the comments and the decision not to promote Plaintiff.  *See, e.g.*, *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("'Stray remarks . . . by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.'") (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)); *see also Witkowich*, 541 F. Supp. 2d at 585 (statement by decision maker regarding plaintiff's lawsuit not probative of discrimination where it was made one year after the employment decision and open to various interpretations).

   Plaintiff adduces evidence of one more instance on which Delacruz asked him his age:  in 2006, Delacruz advised Plaintiff that a custodial worker position was opening up, indicated he would like to talk to Plaintiff about the position, and followed up that introduction by asking

---

[22]    Plaintiff argues that senior custodial workers took a more active role in the hiring process, but in support he cites only to sample interview forms on which senior custodial workers were permitted to recommend whether or not custodial worker applicants should be considered as finalists.  (Pl.'s 56.1 ¶ 24 (citing Micolo Aff. Exs. B–D, I).)  Furthermore, Delacruz testified at his deposition that he never participated in the decision to appoint or hire a full-time custodian, only in the interview process.  (Deposition of Darwin Delacruz (Doc. 19, Ex. C), at 25.)   Plaintiff does not dispute that Garnot made the final selection decision and recommendation, or suggest that anyone else did so.

Plaintiff how old he was.  (Pl.'s Dep. at 107–08.)  Plaintiff, however, has provided no other context for the remark and has admitted that neither Delacruz nor anyone involved in the interview for the 2006 vacancy following the encounter with Delacruz indicated to Plaintiff that his age would in any way affect his being considered for the position.  (*Id.* at 109.)   Given the context of the comment (as part of apparent serious consideration of Plaintiff for the position), the remoteness in time to the failure to promote at issue, and Delacruz's non-involvement in the failure to promote at issue, I find that this isolated question is not especially probative of age discrimination.  *See, e.g.*, *Gordon v. Health & Hosps. Corp.*, No. 06-1517, 2008 WL 924756, at *9 (E.D.N.Y. Mar. 31, 2008) (describing co-worker's question regarding plaintiff's age as "a simple question, innocuous on its face" and as not providing sufficient grounds for an inference of discrimination).

Next, Plaintiff points to Collins's comment during an interview in 1999 or 2000 that BOCES was seeking a custodial worker who would remain in the position for four to five years. Collins was a decision maker at the time, and it is possible that Collins intended to suggest that he did not expect Plaintiff to be working for another four to five years.  It is equally plausible, however, that Collins was simply communicating job criteria to the Plaintiff.  (*See* Pl.'s Dep. at 65–67.)  The comment (which did not directly refer to Plaintiff's age) is "simply too vague, and too susceptible to any number of benign meanings."  *Witkowich*, 541 F. Supp. 2d at 585.   What is clear, and what renders this comment devoid of probative value, is that the comment bore no relationship to the failure to promote at issue in this case, as it occurred at least seven years prior and was made by a decision maker who had long since left BOCES by July 2007.  *See, e.g.*, *Everson v. N.Y.C. Transit Auth.*, No. 02-1121, 2007 WL 539159, at *26 (E.D.N.Y. Feb. 16, 2007) (decision maker's statements to plaintiff did not demonstrate pretext where decision maker

"retired in 1992, more than six years before the failure to promote plaintiff, thus these statements were not even remotely temporally related to the employment decision").[23]

Finally, Plaintiff points to Garnot's statement in 2002, after Plaintiff had accepted a part-time position in the Copy Center, that "You work for me and me alone" as evidence of pretext. First, although made by a decision maker, this comment is not in any way susceptible to an age-discriminatory interpretation and it was not made in close temporal proximity to or in connection with the July 2007 failure to promote.  Plaintiff argues that other employees in the Operations & Maintenance Department were permitted to work in the Copy Center, (Pl.'s Mem. at 18), but Plaintiff does not argue that those employees were outside of his protected class and, in any event, does not even provide factual support for the claim that others in his department worked in the Copy Center.  (See Pl.'s Aff. ¶ 14.)  Plaintiff argues that the statement indicates that Garnot was not going to let him work in any other position at BOCES other than as part-time courier—including, the implication seems to be, as custodial worker, (Pl.'s Mem. at 17)—but, if anything, the statement only suggests that Garnot would not permit Plaintiff to work outside the Operations & Maintenance Department, a department in which Plaintiff would, in fact, have worked had he been promoted to custodial worker.  In any event, Plaintiff's own documentary evidence indicates that Garnot was not opposed to Plaintiff working outside the department, but instead

---

[23]    In any event, it is unlikely that Collins, who hired Plaintiff in 1997 at the age of 70, (see Defs.' 56.1 ¶ 4), suddenly became hostile to him on account of his age two or three years later. See, e.g., Garcia v. Henry St. Settlement, 501 F. Supp. 2d 531, 541 (S.D.N.Y. 2007) ("[W]here the individual who made the decision identified by a plaintiff as an adverse employment action is the same person who previously promoted that employee, it is difficult to impute . . . an invidious motivation, to that individual.") (second alteration in original) (internal quotation marks omitted); see also Wood v. Sophie Davis Sch., No. 02-7781, 2003 WL 22966288, at *4 n.14 (S.D.N.Y. Dec. 15, 2003) (theory underlying same-actor inference is same in failure-to-promote cases as in termination/discharge cases).

wished only to be given advance notice of any outside work assignments.  (*See* Pl.'s Aff. Ex. 19 (email from Garnot stating, "I don't recall being made aware of the extra hours [Plaintiff] may be asked to work.  No matter my real concern and I spoke to [Plaintiff] this morning was that I must be notified prior to him working by [h]im.").)  Garnot's comment, then, is not at all probative of age discrimination.

On balance, considering the factors the Court must take into account when analyzing allegedly discriminatory comments, I find that the proffered comments here lack sufficient indicia of age-discriminatory intent to overcome Defendants' showing of a legitimate, nondiscriminatory reason for not promoting Plaintiff.

### c.       Zamora's Replacement

Finally, Plaintiff argues that the circumstances surrounding the failure to promote, and then the subsequent promotion of, Zamora's eventual replacement as custodial worker evince a conspiracy by Defendants to cover up age-discriminatory practices.  Plaintiff has adduced evidence demonstrating that Robert Totah, a 61-year-old part-time cleaner for BOCES (as of July 2007), applied for the same custodial worker promotion for which Plaintiff and Zamora applied.  (Pl.'s 56.1 ¶¶ 83–84.)  Plaintiff has also adduced evidence that Totah had been working as a part-time cleaner for BOCES since November 1999 and had prior job experience in "institutional" cleaning.  (*Id.* ¶ 84.)  Plaintiff suggests that Totah was discriminated against based upon his age in July 2007 when Defendants passed Totah over in favor of Zamora, thereby demonstrating widespread age-discriminatory practices at BOCES.  (Pl.'s Mem. at 15.)  Further, Plaintiff adduces evidence that after Zamora left in September 2008, Garnot met with Totah and advised him that he would be hired as a full-time custodian.  (Pl.'s 56.1 ¶¶ 95–96.)  Plaintiff argues that the timing of Totah's promotion—after Defendants received notice of Plaintiff's

EEOC charge in February 2008, (*id.* ¶ 93)—demonstrates that Totah was hired so that Defendants could appear more age-friendly and cover up their previous age-discriminatory conduct, (Pl.'s Mem. at 18).  Defendants argue that the Court may not consider Totah's sworn affidavit, on which these facts and arguments are exclusively based, because Plaintiff did not timely identify Totah as a witness and because the facts would be inadmissible at trial under various Federal Rules of Evidence, including Rules 403, 404(b), and 608(b).  (*See* Defs.' Reply Mem. at 4–10.)[24]  Assuming without deciding that I may consider the affidavit, I find Plaintiff's arguments highly speculative and ultimately unsupportive of a claim of age discrimination.

Plaintiff provides no factual support for its argument that Defendants' actions with respect to Totah demonstrate widespread age-discriminatory conduct at BOCES.  Plaintiff argues that, due to Totah's part-time cleaner and other institutional cleaning experience, Totah was a better qualified candidate for the July 2007 custodial worker position than was Zamora.  (Pl.'s Mem. at 14–15.)  As noted above, however, the Court "must respect the employer's unfettered discretion to choose among qualified candidates."  *Byrnie*, 243 F.3d at 103 (internal quotation marks omitted).  That rationale certainly applies here, where both Zamora and Totah had the part-time cleaner experience that Defendants maintain qualified an applicant for a custodial worker position.  In any event, it does not automatically follow from the fact that Totah was the longer-tenured part-time cleaner that he was passed over because of his age.  Plaintiff ignores that there existed various other components to the custodial worker selection process—including interview evaluations, applicant recommendations, and familiarity with the relevant building— and has not adduced any evidence demonstrating that Totah was so superior in these regards as

---

[24]      "Defs.' Reply Mem." refers to Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment.  (Doc. 32.)

compared to Zamora that discrimination must have occurred.  Plaintiff also points to the fact that

Defendants scheduled Totah for his custodial worker interview for a time shortly before his part-

time cleaner shift was to begin, (Pl.'s Mem. at 15), but this fact is of no consequence.  An

inconvenient interview timeslot, absent any other evidence of intent, cannot somehow

demonstrate that Defendants decided before the interview that they would not promote Totah.  In

any event, Plaintiff's argument seems to prove too much:  by arguing that Totah was the most

qualified candidate for the July 2007 custodial worker position, Plaintiff undercuts his own

comparative qualifications for the position and therefore undermines his ultimate argument—that

age, not a qualifications discrepancy, motivated Defendants' failure to promote him.

      Plaintiff likewise provides no factual support for his claim that Totah was hired so that

Defendants could appear more age-friendly and cover-up previous age-discriminatory conduct.

Plaintiff points only to the fact that Totah was promoted to replace Zamora in 2008 without first

having interviewed with Garnot or seen a vacancy notice for the position.  (*Id.* at 18.)  Plaintiff

argues that, although Defendants submitted interview evaluations for Totah's 2008 interview for

custodial worker, those evaluations are "false records," as they omit pages with the interviewers'

signatures.  (*Id.* at 19; *see* Micolo Aff. Ex. L.)  In reply, Defendants assert that they exchanged

during discovery and submitted with their motion papers only those pages of personnel files that

Plaintiff's counsel designated to be produced, (Micolo Reply Aff. ¶¶ 4–5), and, in any event,

Defendants have supplied those signature pages on reply, (*id.* Ex. B), thereby defeating

Plaintiff's "false records" argument.  Even assuming, however, that a factual dispute exists

regarding whether Totah was interviewed for the 2008 position, and construing this factual

dispute in favor of Plaintiff, the fact that Totah did not proceed through the traditional interview

process for a promotion he received *in 2008* does not suggest that Plaintiff was discriminated

against *a year earlier*.  The argument is grounded in nothing more than speculation, and courts have expressly rejected such arguments in similar cases.  *See, e.g.*, *Hirschberg v. Bank of Am., N.A.*, No. 08-1611, 2010 WL 4872992, at *18 (E.D.N.Y. Dec. 1, 2010 ) (rejecting argument that defendant's termination of plaintiff's replacement after EEOC charge demonstrated pretext because "[t]o the extent Plaintiff is attempting to imply that the timing of [his replacement's] termination was meant to cover up wrongdoing on Defendant's part, Plaintiff has proffered no evidence showing that the timing of Plaintiff's EEOC charge played any role in [his replacement's] termination"); *Pathare v. Klein*, No. 06-220, 2008 WL 4210471, at *7 n.7 (S.D.N.Y. Sept. 12, 2008) (where co-workers in plaintiffs' protected class were initially denied promotions, and later promoted after EEOC complaint, rejecting argument that complaint prompted supposed cover-up of previous discrimination, because plaintiffs "proffer[ed] no evidence that [employer] considered that complaint in making personnel decisions" and argument was "speculative"), *aff'd*, 347 F. App'x 646 (2d. Cir. 2009).

* * *

Mindful that the Court must consider the sum of all evidence of discrimination in its totality and draw all justifiable inferences in favor of Plaintiff, I find that there is insufficient evidence from which a reasonable jury could conclude by a preponderance of the evidence that Plaintiff's age was not just a contributing factor to, but the but-for cause of, Defendants' decision not to promote him.  While I reach this conclusion reluctantly because I am impressed with Plaintiff's work ethic, I am constrained to conclude that Plaintiff's ADEA claim must fail.

30

III.    **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED,

and Plaintiff's claims are DISMISSED with prejudice.  The Clerk of the Court is respectfully

directed to terminate the pending motion, (Doc. 16), and close the case.

SO ORDERED.

Dated: May 18, 2011
          White Plains, New York

                                       _____
                                       CATHY SEIBEL, U.S.D.J.

31